UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

Carmen L. Mendez,

                    *Plaintiff*

    -against-

Pretium Mortgage Credit Partners I,
Loan Acquisition, LP, Pretium Mortgage
Management, Wilmington Savings Fund
Society, FSB, Christiana Trust, as
Trustee for Pretium Mortgage Credit
Partners I Loan Acquisition, LP,
Rushmore Loan Management Services, and
Selene Finance LP,

                  *Defendants*.

--------------------------------------X

**MEMORANDUM AND ORDER**

21-CV-826(KAM)(JRC)

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Carmen L. Mendez ("Plaintiff" or "Mendez"), proceeding *pro se*, commenced this action on February 10, 2021, against Pretium Mortgage Credit Partners I, Loan Acquisition, LP; Pretium Mortgage Management; Wilmington Savings Fund Society, FSB; Christiana Trust, as Trustee for Pretium Mortgage Credit Partners I, Loan Acquisition, LP; Rushmore Loan Management Services; and Selene Finance LP (together, "Defendants") asserting claims arising out of a mortgage and promissory note she entered into on or about July 25, 2007. Presently before the Court is Defendants' motion for summary judgment. For the reasons that follow, Defendants' motion is GRANTED.

1

**BACKGROUND**

The court finds that the following material facts are not in genuine dispute, based on the parties' Local Rule 56.1 statements, declarations, exhibits, and docket.

## I.   Factual Background

In 1999, Plaintiff purchased property located at 2297 Utica Avenue in Brooklyn, New York (the "Subject Property"), secured by a mortgage in the amount of $120,000. (ECF No. 40 ("Pl. Opp."), at 24.)[1]   Plaintiff subsequently entered into an additional mortgage in the amount of $38,140, also secured by the Subject Property on March 27, 2003. (*Id.*)   Subsequently, on July 25, 2007[2], Plaintiff executed and delivered a promissory note in the amount of $320,000 with Countrywide Home Loans, Inc. ("Countrywide"), as well as a mortgage with Countrywide securing the Subject Property as collateral security for repayment of the promissory note (together, the "2007 Loan and Mortgage"). (ECF No. 30-1 ("Def. 56.1 Statement"), at ¶¶ 1-2; ECF 30-2 ("Vargas Decl. Ex. A"), at 30, 33.)   The Countrywide mortgage on the

---

[1] All pin citations to the record refer to the page number assigned by the court's CM/ECF system.

[2] The Defendants' 56.1 Statement incorrectly references July 23, 2007, as the date of the Promissory Note and Mortgage in ¶¶1-2, but the cited evidence reflects the July 25, 2007, date, as does the Motion for Summary Judgment's (ECF No. 39) declaration in support.   The Court may overlook clear and inconsequential typographical errors in the pleadings and disregards the July 23, 2007, date in favor of July 25, 2007. *See, e.g., Reliance Commc'ns LLC v. Retail Store Ventures, Inc.*, No. 12-cv-2067 (ADS), 2013 WL 4039378, at *1 n.2 (E.D.N.Y. Aug. 7, 2013) (overlooking a typographical error wherein the plaintiff inserted another entity's name in place of the defendant's name in one cause of action but used the correct name elsewhere in the pleading).

property was recorded on August 14, 2007, with instrument number 2007000420498.   (Vargas Decl. Ex. A at 33-34, Pl. Opp. at 24.) Plaintiff, in her Amended Complaint, asserts that: (1) the terms of the 2007 Loan and Mortgage changed from July 10, 2007, when she believes she entered into the loan, to the final version; (2) "information in the copies [of loan paperwork provided by Defendants] do not match to [her] loan profile"; (3) various portions of the 2007 Loan and Mortgage paperwork were forged (4) the 2007 Loan and Mortgage is invalid because "the previous loan was not paid and if [Washington Mutual] did not comply with the agreement, then, the loan is invalid"; (5) Defendants are "not the holder, originator, owner, or servicer of the mortgage loan"; and (6) when Defendants "submitted fraudulent documents on 9/6/2022, the [2007 loan] fraud became current." (*See* ECF 29, First Amended Complaint ("FAC"), at 3-5.)   Notwithstanding the alleged fraud, Plaintiff made payments under the 2007 Loan and Mortgage for several years after the closing. (FAC at 3; Pl. Opp at 20.)  Mendez defaulted in repayment of the 2007 promissory note and mortgage on April 1, 2013.  (Vargas Decl. Ex. A at 6.)

On June 20, 2013, the Countrywide Mortgage was assigned from Mortgage Electronic Registration Systems, Inc. (as nominee for Countrywide Home Loans, Inc.) to Bank of America, N.A ("Bank of America").  (*Id.* at 48-50.)   Subsequently, on January 31, 2014, Bank of America commenced a foreclosure action against Mendez in

Kings County Supreme Court (the "Foreclosure Action"), alleging that Mendez was in default on the 2007 loan as of April 1, 2013, and thereafter. (*Id.* at 5-6.) Bank of America subsequently assigned the mortgage to Pretium Mortgage Credit Partners I on June 12, 2015, and Pretium Mortgage Credit Partners I assigned the mortgage to Wilmington Savings Fund Society FSB d/b/a Christiana Trust on July 6, 2015. (Pl. Opp. at 24.) Final judgment directing the foreclosure and sale of the Subject Property was entered on the Foreclosure Action in favor of Wilmington Savings Fund Society FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust, on May 7, 2018, by the Clerk of Court for Kings County Supreme Court. (ECF No. 30-3 ("Vargas Decl. Ex. C") at 10.) Mendez did not appeal. (ECF No. 39, Defendant's Motion for Summary Judgment ("Def. Mot."), at 31.)

On or about June 18, 2018, Mendez filed her first proposed Order to Show Cause (the "First Order to Show Cause") requesting that Kings County Supreme Court deny the foreclosing party's right to sell the property at 2297 Utica Avenue, which was denied. (*Id.* at 31, 151.) In her requested Order, Mendez claimed that "fraud was committed from more than one bank" and "Washington Mutual Bank committed fraud during the refinancing of the loan." (*Id.* at 152.) After the request for the First Order to Show Cause was denied, Mendez filed a second Order to Show Cause on or about June 27,

4

2018, requesting a "change of judge" for the Foreclosure Action, which was also denied. (*Id.* at 31, 154.)

Mendez filed a Chapter 13 bankruptcy petition in United States Bankruptcy Court for the Eastern District of New York on July 17, 2018, which was dismissed on December 23, 2018. (*Id.* at 156.) Mendez filed a subsequent Chapter 13 bankruptcy petition in U.S. Bankruptcy Court for the Eastern District of New York on March 13, 2019, which was dismissed on January 25, 2021. (*Id.* at 162.) Mendez filed a third Order to Show Cause in Kings County Supreme Court on September 30, 2022, seeking to cancel a notice of sale in the Foreclosure Action based on her fraud claims against Wilmington Savings Fund Society, FSB, in the instant case. (*Id.* at 178.) Mendez stated in support of her order that "[t]here is a case pending regarding the legitimacy of the loan" and referenced the instant case by its docket number. (*Id.* at 178-79.)

## II. Procedural History

Plaintiff filed her Complaint in this action on February 10, 2021, seeking to have claims against her and her property in "the amount [of] $1,163,508 nullified" and to order Defendants to bring "original documents to court." (ECF No. 1 ("Complaint"), at 7-8.) Defendant Selene Finance answered the complaint on July 21, 2022; Defendants Pretium Mortgage Credit Management, Pretium Mortgage Credit Partners, Christiana Trust, and Wilmington Savings Fund Society, FSB answered the complaint on July 25, 2022; and

5

Defendant Rushmore Loan Management Services answered the complaint on September 22, 2022. The Defendants raised as defenses, *inter alia*, that they were not the "holder, originator, owner, or servicer of the mortgage loan at issue" during the time Plaintiff alleged fraudulent conduct to have occurred, and second, that Plaintiff's claims were barred by both the statute of limitations and *res judicata*. (*See generally* ECF No. 12; ECF No. 13; ECF No. 16.)

In response, Plaintiff moved to amend her complaint on September 30, 2022, and Magistrate Judge James Cho granted the request on November 7, 2022. Plaintiff filed her amended complaint on November 23, 2022. (*See generally* FAC.) Defendants subsequently moved for a pre-motion conference to discuss their anticipated motion for summary judgment, attaching a Local Rule 56.1 Statement of Material Facts. (*See* ECF No. 30.) On February 9, 2023, the Court held a pre-motion conference to discuss the Defendants' anticipated motion, explain the briefing process and schedule for the Defendants' motion for summary judgment, and recommended that Plaintiff seek and obtain legal assistance for her case. (*See* Minute Entry dated February 9, 2023.) On May 26, 2023, Defendants filed the fully-briefed Motion for Summary Judgment, including Plaintiff's opposition, with the Court. The Court now considers Defendants' summary judgment motion.

**LEGAL STANDARD**

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104. In deciding a summary judgment motion, the court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible

7

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the nonmoving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Finally, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

Because Plaintiff is *pro se*, the court is obliged to liberally construe Plaintiff's submissions and read them "to raise the strongest arguments they suggest." *Campbell v. We Transport, Inc.*, 847 F. App'x 88, 88-89 (2d Cir. 2021) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)). Plaintiff's *pro se* status, however, "d[oes] not eliminate [her] obligation to support [her] claims with some evidence to survive summary judgment." *Nguedi v. Fed. Reserve Bank of N.Y.*, 813 F. App'x 616, 618 (2d Cir. 2020). Plaintiff's "reliance on 'conclusory allegations' and 'unsubstantiated speculation'" will not suffice. *Id.* (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

8

## DISCUSSION

### I.   Plaintiff's Claims are Barred by Preclusion Principles

Defendants argue that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, collateral estoppel, and res judicata, and therefore, Plaintiff's claims should be dismissed based on principles of preclusion.  The Court agrees with Defendants.

### A.   *Rooker-Feldman* Doctrine

"Lower federal courts lack subject matter jurisdiction in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *McCluskey v. New York State Unified Court Sys.*, 442 F. App'x 586, 589 (2d Cir. 2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). *Rooker-Feldman* also precludes federal district courts from exercising jurisdiction over claims that are "inextricably intertwined" with state court determinations. *Kropelnick v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 n.16, (1983)).  This doctrine recognizes that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).  Accordingly, "[u]nderlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28

9

U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009).

Pursuant to Second Circuit precedent, courts in this circuit examine whether four elements are met to determine whether *Rooker-Feldman* doctrine divests the court of subject-matter jurisdiction:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (internal quotations and citation omitted). "The first and fourth requirements have been classified as 'procedural' and the second and third requirements as 'substantive.'" *Dekom v. Fannie Mae*, 17-CV-2712 (JFB) (ARL), 2019 WL 1259103, at *8 (E.D.N.Y. Feb. 26, 2019), *report and recommendation adopted*, 2019 WL 1403116 (E.D.N.Y. Mar. 28, 2019), *aff'd*, 846 F. App'x 14 (2d Cir. 2021) (quoting *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346 (E.D.N.Y. 2010)).

In the instant case, the procedural requirements have clearly been met.  First, Mendez lost in state court, as evidenced by the Judgment of Foreclosure and Sale entered in the Foreclosure Action. (*See* Vargas Decl. Ex. B.)  Second, the Judgment of Foreclosure and

Sale was entered more than two years prior to the commencement of the instant case. (*Id.*) Defendants state in their Declaration that Mendez was served with copies of the state court Summary Judgment and Final Judgment related to the Foreclosure Action, and elected not to appeal from either. (Def. Mot. at 31.) Plaintiff alleges that "[t]he case of foreclosure is already on [a]ppeal" but cites no evidence that she filed an appeal. (Pl. Opp. at 11.) Regardless, the status of any appeal would not impact this Court's *Rooker-Feldman* analysis, as courts in this circuit generally apply the doctrine "as long as the federal action seeks review of a previous state court judgment, regardless of whether that judgment is being appealed in the state courts when the federal case begins." *Gutman, Mintz, Baker & Sonnenfeldt, P.C.,* 701 F. Supp. 2d at 347 (collecting cases). As such, the Court finds the procedural requirements to be met for *Rooker-Feldman* preclusion.

The substantive requirements of *Rooker-Feldman* are also satisfied. Plaintiff requests that the court "nullify the [2007] loan due to fraud and invalidity." (FAC at 5-6.) Given the Foreclosure Action arises out of Mendez's default on the 2007 Loan and Mortgage, (*see* Vargas Decl. Ex. A at 5), any attempt to "nullify" or otherwise invalidate the 2007 Loan and Mortgage would constitute an attack on the state court's decision in the Foreclosure Action. Because the state court must necessarily have ruled on the validity of the underlying loan and mortgage in

11

rendering its decision, Plaintiff's request for this Court to review the same loan and "nullify" it meets the substantive requirements of *Rooker-Feldman*. To the extent Plaintiff may not have raised the fraud claim in the state court proceeding, "a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court." *Andrews v. Citimortgage, Inc.*, No. 14-CV-1534 (JS), 2015 WL 1509511, at *5 (E.D.N.Y. Mar. 31, 2015). It is well settled that "an action seeking a declaration of property ownership after loss of title pursuant to a state-court foreclosure judgment [is] barred by *Rooker-Feldman*." *Riley v. Comm'r of Fin.*, 618 F. App'x 16, 17 (2d Cir. 2015) (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426-28 (2d Cir. 2014)). As such, this Court finds that Mendez's claims are barred by the *Rooker-Feldman* doctrine, and accordingly this Court lacks subject-matter jurisdiction over the claims.[3]

---

[3] The Court notes that "[t]he Rooker-Feldman doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment." *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016). In the instant case, Plaintiff does not allege or seek damages beyond nullification of the loan and return of money she paid pursuant to the loan from 2007 to 2014. (FAC at 5-6.) As such, the *Rooker-Feldman* doctrine properly bars her claims. However, to the extent Plaintiff's claims could be read as asserting fraud claims not barred by *Rooker-Feldman*, they would nonetheless be barred by collateral estoppel and the statute of limitations, as discussed *infra*.

**B.** *Res Judicata* **and Collateral Estoppel**

Even if the *Rooker-Feldman* doctrine did not apply, Defendants argue, and the Court agrees, that Plaintiff's claims should be dismissed on the grounds of *res judicata* and collateral estoppel.

*Res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994); *see also Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040 (JFB), 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009) ("All litigants, including pro se plaintiffs, are bound by the principles of *res judicata*."). For a party to succeed in proving the affirmative defense of *res judicata*, they "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). Whether a claim that was not raised in the previous action could have been raised therein "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Woods v.*

13

*Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (internal quotations and citation omitted).  To determine whether two actions arise from the same transaction or claim, a court considers "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001).

The requirements for *res judicata* are met in the instant case. First, the Foreclosure Action was a previous adjudication on the merits.  Second, the Foreclosure Action involved both Plaintiff (as defendant) and defendant Wilmington Savings Fund Society, FSB (as plaintiff).  (Vargas Decl. Ex. B at 2.)  Third, the claims asserted in this action—that the 2007 Loan and Mortgage is invalid as the product of fraud—could have been raised in the Foreclosure Action.  Ultimately, at the heart of Mendez's complaint is a challenge to the legitimacy of the Foreclosure Action and the subsequent judgment issued by the state court.  To find for Mendez on any of her claims would require this Court to overrule the state's determination that Bank of America and the loan's subsequent assignees had standing to foreclose on Mendez's property to satisfy the outstanding loan. *See Deutsche Bank Nat. Tr. Co. v. Spanos*, 961 N.Y.S.2d 200, 202 (2d Dep't 2013) ("In a mortgage foreclosure action, a plaintiff has standing where it is

14

the holder or assignee of both the subject mortgage and of the underlying note at the time the action is commenced.")

In addition, although neither party states whether Mendez argued that the 2007 Loan and Mortgage was fraudulent in the state court Foreclosure Action, she had the opportunity to do so, or to file a motion to renew in the Foreclosure Action "based upon new facts not offered on the prior motion that would change the prior determination." N.Y. C.P.L.R. 2221. It is clear from the parties' filings that "the same transaction or claim" is at issue in the instant case as in the Foreclosure Action – the 2007 Loan and Mortgage. As such, re-litigating the validity of the loan is barred by *res judicata*.

Likewise, the issues being raised by Mendez are barred by the doctrine of collateral estoppel. "Collateral estoppel, or, in modern usage, issue preclusion, means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations and citation omitted). Specifically, "[u]nder New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the

15

prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citations omitted). Mendez's claims regarding the validity of the 2007 Loan and Mortgage were decided by a state court in the Foreclosure Action, and Mendez has not shown that she did not have a full and fair opportunity to litigate those issues. As such, this Court finds that the claims raised by Mendez are barred by the doctrines of both *res judicata* and collateral estoppel and are dismissed in their entirety.

Plaintiff also claims for the first time in her opposition to the Motion for Summary Judgment that "Defendants misled the [Foreclosure Court] and were using the [Foreclosure Court] to commit FRAUD." (Pl. Opp. at 13.) Plaintiff could likewise have asserted these claims in the Foreclosure Action as counterclaims.[4] *See De Masi v. Country Wide Home Loans*, 481 F. App'x 644, 646 (2d

---

[4] Although New York State follows permissive counterclaim rules, "the Second Circuit has interpreted broadly New York's *res judicata* law, construing it to apply to all claims that 'could have been raised' in a prior proceeding." *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871 (VEC), 2020 WL 1151313, at *11 (S.D.N.Y. Mar. 9, 2020) (quoting *Maharaj v. Bank Am. Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)).

Cir. 2012) ("[T]he district court correctly determin[ed] that [the plaintiff] was precluded from relitigating her claims in federal court because the New York Supreme Court had previously entered final judgment in three cases arising out of the same set of operative facts, namely, the ... foreclosure on [the plaintiff's] home."); *see also Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 172 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011) (finding that a plaintiff's claims were or could have been brought in a state court foreclosure action where the plaintiff's claims were based on "the allegation that [the] defendants improperly obtained a [j]udgment of [f]oreclosure and [s]ale"). As such, any claims by Plaintiff regarding improper actions by Defendants in the foreclosure proceedings are likewise barred by *res judicata* and collateral estoppel.

## II.  Plaintiff's Claims are Time-Barred

Even assuming, *arguendo*, that Plaintiff's claims were not barred by various doctrines of preclusion, Defendants argue, and the Court agrees, that any claim by Plaintiff relating to the alleged fraud that occurred in 2007 is barred by the statute of limitations.

"Under New York law, the statute of limitations is an affirmative defense, and the defendant bears the burden of proving that the plaintiff's claim is untimely." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 156–57 (E.D.N.Y. 2010) (citing

17

*Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004)).
"The defendant's normal burden includes showing when the cause of
action accrued." *Id.* "Pursuant to CPLR 213 (8), 'the time within
which [a fraud] action must be commenced shall be the greater of
six years from the date the cause of action accrued or two years
from the time the plaintiff or the person under whom the plaintiff
claims discovered the fraud, or could with reasonable diligence
have discovered it.'" *Monteleone v. Monteleone*, 78 N.Y.S.3d 247,
248-49 (2d Dep't 2018).  "A cause of action based upon fraud
accrues, for statute of limitations purposes, at the time the
plaintiff possesses knowledge of facts from which the fraud could
have been discovered with reasonable diligence." *Id.* at 249
(internal quotations and citation omitted).

In the present case, Defendants have presented undisputed
facts showing that Plaintiff alleged fraud related to the 2007
transaction beginning since at least the filing of her June 18,
2018, First Order to Show Cause, which alleged "fraud during the
refinancing of the [2007] loan."  (Def. Mot. at 151-52.)  Given
Plaintiff alleges fraud based upon acts that occurred surrounding
the origination of the 2007 Loan and Mortgage on July 25, 2007,
the six-year limitations period would begin to run on that date,
and would end in July 2013, accordingly.  As noted previously,
Plaintiff was clearly aware of the alleged fraud in June 2018 based
on her First Order to Show Cause filed in Kings County Supreme

Court, and therefore the two-year limitations period would run starting no later than the date of that filing, June 18, 2018, and would end in June 2020.  Accordingly, Plaintiff's commencement of this action in February 2021 was untimely under either limitations period, and her claims regarding fraud surrounding the 2007 loan are time-barred under New York law.

Plaintiff asserts that the 2007 fraud "became current" when Defendants submitted documents to her related to the loan origination on September 6, 2022, as part of the discovery process for the instant case.  (FAC at 5, 19.)  However, Plaintiff does not allege that Defendants "concealed from her facts which would apprise her of the [existence of the fraud] . . . [or] made continuing representations which were not true[, and] [c]onsequently the principles of equitable estoppel do not preclude the defendants from invoking the Statute of Limitations as a defense." *Rattner v. York*, 571 N.Y.S.2d 762, 765 (2d Dep't 1991).  Plaintiff was clearly aware of the facts supporting the alleged fraud regarding the 2007 loan prior to September 2022, based upon her representations in the June 18, 2018, First Order to Show Cause which alleges "fraud [] committed from more than one bank." (Def. Mot. at 152.)  As a result, because Plaintiff was aware of the alleged fraud since at least 2018, and the alleged fraud itself occurred on July 25, 2007, or before, equitable estoppel is not applicable to prevent Defendants from asserting

the statute of limitations as an affirmative defense in the instant case.

**III. Defendants' Claims Regarding Pleading Standards**

Because this Court has determined that Plaintiff's case should be dismissed for lack of subject matter jurisdiction, or alternatively as untimely under New York law, the Court need not address Defendants' arguments that Plaintiff failed to plead sufficient facts regarding the named Defendants in support of her fraud claims.

## CONCLUSION

For the forgoing reasons, Defendants' motion is **granted**. Plaintiff's claims are **dismissed** with prejudice.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case. Defendants are requested to serve a copy of this Memorandum and Order and the judgment on *pro se* Plaintiff and note service on the docket.


**SO ORDERED**

Dated:      November 30, 2023
            Brooklyn, New York

**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

20